UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITZ FUENTE, LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SHS ARMIN SCHAFER JR.,<br><br>　　　　　　　　　Defendant. | Case No.: 21cv1986-JES (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**[ECF No. 21]** |

Before the Court is Defendant SHS Armin Schafer Jr.'s ("Schafer") motion to dismiss for lack of personal jurisdiction. ECF No. 21. Plaintiff filed an opposition, and Defendant filed a reply. ECF Nos. 22, 23. The Court found the matter suitable for submission on the papers. ECF No. 24. After due consideration and for the reasons discussed below, the motion is **GRANTED** and the case is **DISMISSED** for lack of personal jurisdiction.

## I.　　BACKGROUND

Plaintiff Ritz Fuente, LLC ("Ritz Fuente") brought this action against Defendant Schafer for breach of contract stemming from the sale of a showjumping horse, Lanciano 81. ECF No. 20. Ritz Fuente is a Wyoming limited liability company with two members: (1) Joseph Sorge, an individual owning 75% and domiciled in Wyoming, and (2) Hanna

Mauritzson ("Mauritzson"), an individual owning 25% and domiciled in California. *Id.* at ¶ 1. Defendant Schafer is an individual and is domiciled in Germany. *Id.* at ¶ 2.

Schafer trains and sells competitive show jumping horses in Germany, and is the owner of SHS Special Horse Service. *Id.* at ¶ 6. Schafer has a website published in German and English regarding his horses and services. *Id.* at ¶ 7. Schafer also uses platforms such as Facebook and Instagram for promotions that feature his horses, services, farm, and himself. *Id.* at ¶¶ 10, 12, Exs. 5, 6. Plaintiff alleges that these online and social media platforms are accessible and displayed to California residents. *Id.* at ¶ 13. In addition, approximately 8 to 10 years ago, Plaintiff alleges that Schafer attended a show jumping event in California. *Id.* at ¶ 11. Plaintiff further alleges that Schafer has sold or trained five horses associated with the United States. *Id.* at ¶ 9.

Schafer's primary form of marketing is "word-of-mouth advertising," which Plaintiff alleges is how Mauritzson was introduced to Schafer. *Id.* at ¶ 14. Mauritzson and another individual named Ashlee Bond ("Bond") met at a showjumping event in Del Mar, California. *Id.* at ¶ 14. Bond, a California resident, informed Mauritzson that she could help her find a horse in Germany. *Id.* Plaintiff alleges that Bond told Mauritzson at that time that she customarily receives a 5% commission for her aid if it results in a sale, but that the commission was paid by the seller, not buyer. *Id.*

Bond then contacted a German dealer/agent named Klaus Schaaf ("Schaaf"). *Id.* ¶ 15. Schaaf sent videos of horses from farms he toured in Germany. *Id.* at ¶ 16. One of the videos he sent to Mauritzson and Bond was Lanciano 81 from Schafer's farm. *Id.* Mauritzson then traveled to Germany to meet Schaaf and tour show-jumping horse farms, including Defendant Schafer's farm. *Id.* at ¶ 17. Plaintiff alleges that Mauritzson told Schafer at that time that she was from California and "was looking to bring a horse back to California." *Id.* at ¶ 6.

In November 2018, Ritz Fuente entered into an agreement with Schafer to buy Lanciano 81 which was considered a high-level jumping horse. *Id.* at ¶ 18, Ex. 1. Schafer represented that the horse competed at the 1.50-1.55m level and was ready to compete at

the 1.60m level. *Id.*, Ex. 1. Schafer also represented the horse was in "good health and condition" and fit for the intended purpose of competing at the 1.50m level. *Id.* at ¶ 19. Under the agreement, Schafer would provide a mutual carrier to deliver the horse. *Id.*

The horse was delivered to Ritz Fuente in San Diego on or about December 13, 2018. *Id.* at ¶ 20. The purchase price was $397,355, which Plaintiff alleges was transferred from a California bank to Schafer. *Id.* at ¶ 21. Ritz Fuente alleges that, from this amount, Schafer paid a commission to Schaaf and Bond for the sale of Lanciano 81. *Id.* Including this sale, Plaintiff alleges that Schafer has sold fourteen horses, four of which were sold to California residents. *Id.* at ¶ 23.

In the months following the horse delivery, Plaintiff alleges that it realized the horse could not compete at the 1.50m level as promised. *Id.* at ¶ 24. As a result, Plaintiff initiated this lawsuit, asserting a cause of action for breach of contract.

On September 8, 2022, Schafer filed his first motion to dismiss for lack of subject matter jurisdiction. ECF No. 13. The Court granted this motion on August 17, 2023, but also granted Plaintiff limited jurisdictional discovery for Schafer's sales and contacts in California. ECF No. 17. On October 27, 2023, Plaintiff filed its Second Amended Complaint. ECF No. 20. Schafer then filed this second motion to dismiss for lack of personal jurisdiction, which is currently pending before the Court. ECF No. 21.

## II. LEGAL STANDARDS

Defendant Schafer brings this motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). Once the defendant moves to dismiss for lack of personal jurisdiction, the plaintiff then bears the burden to establish that the Court has personal jurisdiction over the defendant. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Where the defendant's motion is based on written materials such as affidavits rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Marvix Photo*, 647 F.3d at 1223. The plaintiff cannot "simply rest on the bare allegations of its complaint," but

uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (*quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). Allegations in the complaint may be contradicted by affidavit, but factual disputes must be resolved in the plaintiff's favor. *Marvix Photo*, 647 F.3d at 1223.

Where, as here, federal court jurisdiction is based on 28 U.S.C. § 1332(d) and only state law causes of action are asserted, the district court applies the law of the state in which it sits—here, California—to establish personal jurisdiction. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. P. § 410.10; *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996). Therefore, to establish personal jurisdiction, Plaintiff must satisfy the due process Constitutional requirements.

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts can either be established through general or specific jurisdiction.

General jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). If found to be continuous and systematic, the defendant would be "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919 (2011). Individuals are "at home" in their state of domicile. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1019 (2021).

For specific jurisdiction, the Ninth Circuit applies a three-part test to establish jurisdictional power over a non-resident defendant: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or

resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff must show that the first two prongs have been satisfied. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If established, the burden switches to the defendant to show it would be unreasonable for the Court to have jurisdictional power. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

### III. DISCUSSION

#### A. Spoliation

As a threshold matter, Plaintiff first argues that the Court should deny this motion to dismiss as a sanction for Defendant's spoliation of evidence. ECF No. 22 at 3-6; 19-20. Specifically, Plaintiff argues that Defendant removed a page from his website that listed prior horse sales into the United States during the pendency of this lawsuit. *Id.* at 4.

While the Court does have powers to impose sanctions under certain circumstances, it is not clear under what authority Plaintiff brings its motion. *See* ECF No. 22 at 19-20. The Court does have authority to impose certain sanctions under Rule 37(b)(2) but only where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). In the case cited by Plaintiff, *Pennar Software Corp. v. Fortune 500 Systems Ltd.*, the Rule 37(b)(2) sanction was based on various discovery orders of the court, including ones to produce the current and prior versions of that defendant's websites. No. 01-01734 EDL, 2001 WL 1319162, at *4 (N.D. Cal. Oct. 25, 2001) (identifying three court orders that plaintiff alleged defendant violated). Plaintiff has not identified any such order issued by this Court that a Rule 37(b)(2) motion could be based on. *See generally* ECF No. 22 at 19-20.

A motion for sanctions may also be made under the Court's inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). However, the Court's "inherent

powers must be exercised with restraint and discretion." *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, at *4, 2004 U.S. Dist. LEXIS 16835, at *12 (N.D. Cal. Aug. 17, 2004) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)). As the case Plaintiff cites notes, "[w]hile a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Pennar Software*, 2001 WL 1319162, at *5 (citing *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)). "A sanction for failure to preserve evidence is appropriate only when a party has 'consciously disregarded' its obligations to preserve it." *Id.*

The basis for Plaintiff's request for this sanction is as follows. Declarant Harnett is a paralegal who states that she accessed the webpage in question on September 29, 2022, before the complaint was filed in this case. ECF No. 22-1 at ¶ 2. This webpage was in fact used in Plaintiff's opposition to Defendant's first motion to dismiss. *Id.* at ¶ 3. Harnett states that when she attempted to access the webpage again on October 2, 2023 in preparation for Schafer's deposition, the webpage disappeared from his website. *Id.* at ¶ 5. Schafer was asked about the webpage during his deposition. He testified that he was not aware that that specific webpage was gone and that he did not remove it personally, because others at his company manage the website. ECF No. 22-2 at 37:6-17. He stated that he did not know why it would have been removed but that he could check. *Id.*

Based on this record, the Court declines to find sanctions warranted under its inherent powers. Schafer gave credible testimony that he did not consciously remove the webpage from the website because he does not manage the website himself, particularly the pages in English. As will be discussed below in the specific jurisdiction part of this order, the Court does not find the contents of the webpage to be particularly crucial to whether or not to find personal jurisdiction. Furthermore, as Harnett admitted, Plaintiff

has a copy of this webpage from 2022 that it submitted to this Court now and that it showed to Schafer and questioned him about in his deposition. The lack of prejudice here also counsels against the requested sanction of forcing Schafer to submit to personal jurisdiction to this Court on that ground alone.

Thus, the Court declines to find spoliation of evidence here that would warrant denial of Defendant's motion to dismiss on that ground.[1]

### B.     General Personal Jurisdiction

General personal jurisdiction over a defendant is found when the defendant has "continuous and systematic" contact with the state at issue to render them essentially at "home" in that state. *Ford Motor Co.*, 141 S. Ct. at 1024. Individual defendants are "at home" in their state of domicile. *Id.* A person's place of domicile is where they are permanently living or a place they intend to move indefinitely. *Id.* The Court's previous order granting the first motion to dismiss for lack of personal jurisdiction stated that previous sales history cannot be substituted for domicile. ECF No. 17 at 6 (citing *Daimler AG v. Bauman*, 571 U.S. 112, 137 (2014)).

It is undisputed that Schafer is an individual and is domiciled in Bürstadt, Germany. ECF No. 20 at ¶ 2. As in its previous order, this undisputed fact requires the Court to find that it does not have general personal jurisdiction over Schafer as an individual defendant. In its motion, Plaintiff appears to still advance an argument that this Court has general personal jurisdiction over Schafer based on sales to horses into California. ECF No. 22 at 9-10 (recounting sales of horses into the United States and California and stating that "it is perfectly appropriate and within the discretion of this Court to exercise ***general personal jurisdiction*** over Defendant Schafer") (emphasis added). However, Plaintiff appears to confuse and conflate general and specific personal

---

[1] Plaintiff further argues that Defendant is engaging in obstruction to process by refusing to submit to arbitration anywhere in the world. ECF No. 22 at 6-7. However, because the Court finds that it does not have personal jurisdiction over Defendant as set forth below, it cannot grant any relief relating to arbitration.

jurisdiction. The case that Plaintiff cites to support the above statement deals only with specific personal jurisdiction, not general. *See Thurston v. Fairfield Collectibles of Georgia, LLC*, 53 Cal. App. 5th 1231, 1237 (2020) ("[Plaintiff] disclaims any reliance on general jurisdiction. Hence, we discuss only specific jurisdiction.").

Thus, finding that Plaintiff makes no colorable argument to support a theory under general personal jurisdiction, the Court finds that it cannot exercise personal jurisdiction over Schafer on this ground.

### C. Specific Personal Jurisdiction

As stated above, the 9th Circuit uses a three-prong test to determine if there is specific jurisdiction: (1) the defendant must purposefully avail themselves of the benefits and protections of the forum state, (2) the claim initiated in the action must be based on the defendant's forum-related activities, and (3) it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden to satisfy the first two prongs of this test; if he does, then the burden shifts to the defendant to show why the exercise of jurisdiction would not be reasonable. *Id.*

The test utilized by the courts to evaluate the first prong depends on the claim at issue. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). If the claim sounds in contract, courts apply the "purposeful availment" test, whereas if the claim sounds in tort, courts apply the "purposeful direction" or "effects" test.[2] *Id.; see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F,3d 450, 460 (9th Cir. 2007). A defendant purposefully avails himself when the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.3d at 1362 (citation omitted). In addition, the defendant's conduct in the state must be "substantial" and not merely "random, fortuitous, or attenuated." *Burger King Corp. v.*

---

[2] The Court emphasized that this is the proper test to apply to personal jurisdiction questions in contract disputes as compared to the torts-based disputes in its prior order (ECF No. 17 at 7), but Plaintiff in this motion appears to still rely on the "effects" test. ECF No. 22 at 15.

*Rudzewicz*, 471. U.S. 462, 475-476 (1985). When a defendant has "deliberately" engaged in substantial activities in the forum or established "continuing obligations" with forum residents, such defendant has purposefully availed themselves of the privilege of conducting business in the forum. *Id.* at 476. The focus is on the *defendant's* actions, and it is those actions that must establish the substantial contact. *Id.* at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."); *see also Walden v. Fiore*, 571 U.S. 277, 289 (2014) (finding error where court focused on "a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis").

In the Court's prior order, it found that the following acts were not sufficient to meet the purposeful availment test: (1) entering a contract with a California resident where the contract was executed in Germany and the delivery of Lanciano 81 was to Plaintiff's carrier in Germany; and (2) Schafer's knowledge that he sold a horse for use in California or was paid from a California bank account. ECF No. 17 at 7-9. Plaintiff reiterates these same facts to support its personal jurisdiction argument, as well as the following additional facts: (1) Schafer's social media presence and website accessibility to California residents; (2) Schafer's history of selling at least 4 horses to California in the past; and (3) Schafer potentially paying a commission to Bond, a California resident. The Court will address each of these new allegations in turn.[3]

### i. Website and Social Media Presence

First, Plaintiff points to Schafer's website and social media accounts to support its jurisdiction argument. As to the website, Plaintiff alleges that Schafer has a website in both German and English where he advertises his services, among which are sale of

---

[3] Plaintiff argues that the declaration of Mr. Catanese that was submitted by Defendant in order to support its claim that this Court lacks personal jurisdiction should not be considered by the Court because Mr. Catanese lacks personal knowledge of the statements therein. ECF No. 22 at 18. However, the Court below in its analysis relies on the transcript of the testimony of Defendant Schafer himself, not the statements made by Mr. Catanese.

horses. ECF No. 20 at ¶ 7-8. The website previously had a link to "References," which included the list of horses that have been sold in the past. *Id.* at ¶ 9. In addition, Plaintiff alleges that Schafer maintains both a Facebook page and Instagram account related to his business. *Id.* at ¶¶ 10-13. Among other things, those pages include posts and pictures of horses he has been involved with that have trained in California and Plaintiff alleges that the posts show that Schafer himself has been to a training event in California 8 to 10 years ago. *Id.* at ¶ 11.

To the extent websites can be used to establish personal jurisdiction, courts typically use a "sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). Where a website might only passively advertise services and offerings, but does not permit any interactivity that would allow the parties to actually transmit business through the website, courts are reticent to find purposeful availment. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).

The website here squarely falls at one end of the spectrum. "On one end of the scale are passive websites, which are accessible to anyone and merely display information." *Crouch v. Ruby Corp.*, 639 F. Supp. 3d 1065, 1080 (S.D. Cal. 2022). This type of passive website alone cannot confer personal jurisdiction. *Id.* There is nothing alleged or argued by Plaintiff that suggests that an exchange of information or business happens on Schafer's websites. The list of sales in California is only a list—there is no suggestion that any of the sales actually took place over the website itself. Rather, the website only provides general information regarding Schafer's services, with nothing that is specifically tailored to or directed at California. Similarly, the Facebook and Instagram pages do not permit transacting business either. Accordingly, the Court is not persuaded that these passive websites support personal jurisdiction over Schafer.

    **ii.    Past Horse Sales into California**

Second, Plaintiff cites testimony from Schafer regarding at least 4 horse sales that have been made into California. ECF No. 22-2 at 12:19-22; 21:14-20. Plaintiff argues

that 4 out of the 14 known sales equates to a percentage of sales of 42.6% into California and constitutes a substantial portion of Schafer's known public sales, which should confer jurisdiction over him in California. ECF No. 22 at 10-13.

Plaintiff makes this argument relying on the "purposeful direction" or "effects" test however (*see* ECF No. 12-13), which as the Court has noted above, does not apply where the claim is based on contract like it is here. The Ninth Circuit has explained the difference between these two tests as follows. Evidence of "purposeful direction" or "effects" generally consists of action *taking place outside the forum* that is directed at the forum. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (emphasis added). In contrast, evidence of "availment" is typically *action taking place in the forum* that invokes the benefits and protections of the laws in the forum. *Id.* (emphasis added). The Court must apply the "availment" test here, where the claim is for breach of contract. *Picot*, 780 F.3d at 1212.

Simply having sold horses into California in the past, without more, does not meet the availment test. As courts have emphasized, entering into a contract alone with a resident of a state does not automatically confer jurisdiction there. *Boschetto*, 539 F.3d at 1017 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum."). The Court has no additional information regarding any of these prior sales that would suggest that Schafer takes actions within California related to these sales. Even if the sales resulted in the horses ending up in California and Schafer knew that they would, if the contracts took place entirely outside of California in Germany, the purposeful availment test would not be met. Plaintiff additionally suggests that these sales are significant enough to equate to Schaafer having a brick-and-mortar store in California. ECF No. 22 at 12. However, the case that it relies upon dealt with a volume of online sales through the defendant's website, which was partially analyzed through the sliding scale of interactivity as discussed above. *See Thurston*, 53 Cal. App. 5th at 1237. As discussed above, Schafer's website is not interactive such that business can be transacted through the website and there is no further evidence of him reaching out to

California in any way. Accordingly, the Court is also not persuaded that these past sales into California confer jurisdiction over Schafer either.

### iii. Commission to Bond

Lastly, Plaintiff asserts that Schafer paid a commission to California resident Bond for her role in facilitating the purchase of Lanciano 81. Plaintiff alleged that Bond told Mauritzson she customarily receives a 5% commission that is paid from the seller. ECF No. 20 at ¶ 14. Specifically, Plaintiff alleged in the Second Amended Complaint that Schafer paid a 10% commission related to the sale of Lanciano 81, 5% of which went to Bond. *Id.* at ¶ 21; *see also id.* at ¶ 27 ("Whether Schafer knew it or not, whether he was truthful or not, the fact remains that a California resident, Bond, was paid a commission on the sale of the Horse from monies sent from a California bank to Germany, for a horse delivered to California.").

Against these allegations, below is the summary of the testimony that Schafer gave during his deposition on the issue of the commission. Schafer testified that he did not know if he ever "paid out any commissions directly or indirectly in connection with a horse sale to a resident in California." ECF No. 22-2 at 13:2-5. He testified that when an agent takes a buyer to see horses on his farm, the agent does not receive a commission from him and if they did, it would be an arrangement between the agent and buyer. *Id.* at 13:21-14:12. He testified that he did not pay a commission to Schaaf related to the sale of Lanciano 81. ECF No. 22-2 at 18:5-7. When asked if he knew who Bond was, Schafer testified that he knew of her as an international rider and that he only knew her from television. ECF No. 22-2 at 18:11-24. He testified that he did not pay any money to Bond for the sale of a horse. *Id.* at 18:21-24; 36:19-37:3; 20:21-21:13.

As outlined above in the legal standards, where a motion is based on written materials such as affidavits, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Mavrix Photo*, 647 F.3d at 1223. Uncontroverted allegations in the complaint must be taken as true, but allegations in the complaint may be contradicted by affidavit. *Schwarzenegger*, 374 F.3d at 800. Factual

disputes in competing affidavits however must be resolved in the plaintiff's favor. *Mavrix Photo*, 647 F.3d at 1223.

Applying this legal framework, the Court must conclude there is no evidence that has been presented that Schafer paid a commission to Bond. Plaintiff's only support for its position are the allegations in the Second Amended Complaint. It did not submit any affidavits or deposition testimony that supports that Schafer paid a commission to Bond. In contrast, Schafer did testify under oath that he did not pay Bond a commission for the sale. "If only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). This is the exact situation here—the Court cannot assume the veracity of Plaintiff's allegations where they are contradicted by affidavits submitted by only the opposing side.[4]

Moreover, even if the Court were to assume some ambiguity regarding whether Schafer paid the commission to Bond, or if as Plaintiff suggests, Schafer may have indirectly paid the commission some way without his knowledge (*see* ECF No. 20 at ¶ 27), this would not be enough to confer jurisdiction. As the Court stated in its previous order "foreseeability alone" is not sufficient to establish personal jurisdiction even if Schafer should have known that the Lanciano 81 sale would have resulted in a financial transaction with Bond; rather Plaintiff must show that Schafer "deliberately reached out beyond his home." *See* ECF No. 17 at 8; *Sher*, 911 F.2d at 1362 ("normal incidents" of a transaction that is centered elsewhere does create a deliberate and substantial connection with California to establish purposeful availment).

\* \* \*

---

[4] This would pose a different question if "both parties support their respective positions with affidavits." *Data Disc.*, 557 F.2d at 1284-1286 (discussing how the court is to balance and use the conflicting evidence in supporting affidavits to determine the personal jurisdiction question).

Thus, in summary, the Court finds that Plaintiff has failed to establish that this Court has either general or specific personal jurisdiction over Defendant Schafer.[5]

### IV. CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS** the motion to dismiss for lack of personal jurisdiction.

Defendant further requests that the Court not grant any further additional jurisdictional discovery and dismiss the complaint without leave to amend. The Court notes that Plaintiff does not specifically request additional jurisdictional discovery in his response. *See generally* ECF No. 22. Furthermore, the Court has full discretion in determining whether a party should be entitled to conduct additional jurisdictional discovery, particularly where the claim to personal jurisdiction is "attenuated and based on bare allegations in the fact of specific denials made by the defendants." *Pebble Beach*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). Having already been given an opportunity to conduct the requested jurisdictional discovery, Plaintiff does not identify any new discovery that it could not have conducted before that would help now establish jurisdiction. Accordingly, the Court **DISMISSES** the Second Amended Complaint **with prejudice** and without leave to amend. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: August 9, 2024

Honorable James E. Simmons Jr.
United States District Judge

---

[5] Because the Court finds that Plaintiff has failed to meet the first prong of specific jurisdiction—purposeful availment—it declines to reach the other two prongs. *See Schwarzenegger*, 374 F.3d at 802.